IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICKY FRANKS,                          :     CIVIL ACTION
                                       :     NO. 12-1213
          Plaintiff,                   :
                                       :
     v.                                :
                                       :
PHILADELPHIA POLICE DEPT., et al.,     :
                                       :
          Defendants.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              AUGUST 9, 2013


I.   **INTRODUCTION**

          Ricky Franks ("Plaintiff") brought this civil rights

action against the Philadelphia Police Department, Robert Shaw,

William Schlosser, Kevin McNicholas, John Komorowski, and "All

Officers of the 24th Eastern Division" (collectively,

"Defendants"). Plaintiff filed his complaint on March 26, 2012,

alleging false arrest in violation of his Fourth Amendment

rights, pursuant to 42 U.S.C. § 1983, and alleging defamation

under Pennsylvania state law.[1]

          On November 5, 2012, the Court granted Defendants'

motion for partial summary judgment, leaving only Plaintiff's

---

[1]        The Court liberally construed Plaintiff's pro se
pleading. See United States v. Otero, 502 F.3d 331, 334 (3d Cir.
2007) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

claim of false arrest against Officer Schlosser and claim of defamation against Detective Komorowski intact.

Following a bench trial and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this Memorandum constitutes the Court's findings of fact and conclusions of law. For the reasons that follow, the Court will grant judgment in favor of Plaintiff on his claim of false arrest, and in favor of Detective Komorowski on Plaintiff's claim of defamation. The Court will award Plaintiff $7,500 in compensatory damages.

## II.   PROCEDURAL BACKGROUND

On October 4, 2012, Defendants filed a motion for partial summary judgment. Defs.' Mot. Summ. J., ECF No. 25. The Court held a hearing on Defendants' motion on November 5, 2012. Plaintiff represented himself at this hearing. The Court granted Defendants' motion as to all claims against Defendants Shaw, McNicholas, the Philadelphia Police Department, and "All Officers of the 24th Eastern Division." Order, Nov. 5, 2012, ECF No. 28. It denied the motion as to all claims against Detective Komorowski. Id. The case proceeded to trial on Plaintiff's claim of false arrest against Officer Schlosser and his claim of defamation against Detective Komorowski.

After ruling on Defendants' motion for partial summary judgment, the Court placed the case in suspense for 75 days in

order to allow Plaintiff time to seek legal representation for the balance of the proceedings. On March 21, 2013, the Court held a final pretrial conference. After a discussion with Plaintiff regarding his inability to retain counsel and his desire to proceed pro se, the Court scheduled a non-jury trial upon Plaintiff's request and with the consent of Defendants. Order, March 22, 2013, ECF No. 42. Plaintiff represented himself at trial.

On April 25, 2013, the Court held a bench trial at the conclusion of which it heard closing argument. The Court has reviewed all of the admitted evidence in this case: Plaintiff's testimony, Officer Richard Ciaccia's testimony, Officer Shaw's testimony, Officer McNicholas's testimony, Officer Schlosser's testimony, Detective Komorowski's testimony, and each party's supporting exhibits. Upon this record, the Court makes its findings of fact and conclusions of law.

### III. JURISDICTION

The Court has jurisdiction over Plaintiff's constitutional and federal law claims. See 28 U.S.C. §§ 1331, 1343 (2006). The Court has supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(a).

## IV.  FINDINGS OF FACT[2]

On December 3, 2010, at approximately 2:00 p.m.,
Police Officers Schlosser, Shaw, and McNicholas were on bike
patrol in the 24th Police District of Philadelphia. Trial Tr.
69:7-24, April 25, 2013. At that time, the three officers were
in the park located at Belgrade Street and Allegheny Avenue in
the Port Richmond neighborhood of Philadelphia.[3] Id. at 69:7-24;
see Court Ex. 1. All three officers testified that they observed
a double-parked black Chevy Impala and three African American
men exit the vehicle. Trial Tr. 39:4-7, 52:13-18, 69:25-70:15.
Officer Schlosser and Officer Shaw testified that they saw one
of the men go to the back of the vehicle and bang on the trunk,
asking the driver to open it. Id. at 39:4-10, 70:10-12. These
officers stated that once the trunk was opened, one of the men
retrieved a black backpack and they then all began walking into
the park. Id. at 39:8-15, 70:10-15. Officer Schlosser testified
that after the man had retrieved the black backpack, the vehicle
took off at a high speed, north on Almond Street and made a
left-hand turn onto Madison Street. Id. at 70:19-21; see Court

---

[2]     The findings of fact are presented by way of narrative
and are supported by pin point citations to the trial record.

[3]     The Court has attached a typed replica of Court
Exhibit No. 1, a map that was drawn during trial to illustrate
the paths travelled by the various parties. The map is not drawn
to scale and is at best an approximation of the actual movement
of the parties, based on their testimony.

Ex. 1.

Officer Shaw testified that the three men walked
towards a storage shed in the park, and that once they
approached it, Officer Shaw said "Yo," to them. Trial Tr. 39:16-
22. Officer Shaw stated that at this time, upon looking in his
direction, the three individuals ran. Id. at 39:22-23. Two men
ran eastbound and the third man with the backpack ran northbound
up Almond Street through the park. Id. at 36:23-40:3; see Court
Ex. 1.

Officer Schlosser testified similarly, but in less
detail, that when the three males walked into the park and saw
the bright blue and yellow jackets of the officers with the word
"Police" on the backs, they began to run. Trial Tr. 71:3-6. When
asked where the men were in relation to the officers in the
park, Officer Schlosser testified, "Well, they were still almost
behind us, I think, initially when they see us, and then two
males ran directly passed [sic] us, across us almost on our,
like it would have been my right side at least." Id. at 72:8-11.
He testified that at their closest, the men were approximately
twenty feet away from him. Id. at 72:14. When asked if he got "a
pretty good look at them," Officer Schlosser responded, "I
believe so." Id. at 72:15-16.

Officer McNicholas offered a slightly different
version of events from Officer Shaw and Officer Schlosser,

stating that upon looking in the direction of the screaming and
commotion he heard coming from the double-parked black vehicle,
he saw three males begin running–two westbound through the park,
and one northbound on Almond Street. Id. at 52:13-18; see Court
Ex. 1.

Once the three males split up, Officer Shaw pursued
the individual with the backpack going northbound up Almond
Street, while Officers McNicholas and Schlosser followed the
individuals going westbound. Trial Tr. 40:4-6, 52:19-21, 71:8-
10; see Court Ex. 1. Officers McNicholas and Schlosser testified
that the two men going westbound crossed 3200 Belgrade Street
into a church parking lot and then climbed over a fence. Trial
Tr. 52:21-53:4, 71:13-19. The two officers, who were on bikes,
then turned around and went north on Belgrade and west on
Madison Street, in the perceived direction of the pursued. Id.
at 53:4-7, 73:17-21; see Court Ex. 1. The officers testified
that once they were a couple of blocks away, at Madison and
Chatham Streets, they encountered an older white male and
Plaintiff. Trial Tr. 53:8-15, 73:24-74:12. Officer McNicholas
observed that the older white male was likely Polish, as this
area was in a heavily Polish neighborhood. Id. at 53:11. Both
officers testified that the older white male directed them
westbound in the direction he had seen the speeding car proceed.
Id. at 53:12-14, 74:17-18. Officer McNicholas testified that

6

Plaintiff "agreed, he said, 'Yes, they went that way, they went that way.'" Id. at 53:16-17. Officer Schlosser testified that Plaintiff also "point[ed] in the same direction." Id. at 74:20-21.

Following the tip from these two individuals, Officer McNicholas and Officer Schlosser headed further up the block and found the black Impala they had seen earlier. Id. at 53:17-20, 74:21-23; see Court Ex. 1. Officer McNicholas testified, "The car was hot. You could smell burning rubber. You could smell brakes . . . you could tell that it was being driven really fast." Trial Tr. 53:22-25. While Officer McNicholas stayed with the vehicle, Officer Schlosser turned around and proceeded in the direction from which the officers had come. Id. at 75:5, 54:16-17; see Court Ex. 1. Officer Schlosser testified, "[A]s I told Officer McNicholas, we kind of got duped for a second, but I realized that Mr. Franks was one of the two males that ran through the park from the vehicle that we were initially chasing and I went back and started looking for him." Trial Tr. 75:1-5.[4]

---

[4]        On cross-examination, Officer Schlosser elaborated, "slightly embarrassing as it may be, caught up in the moment with you guys [Plaintiff and the older white male] pointing in that one direction, and that being the direction that the vehicle and you [Plaintiff] and the other male had fled in, I just took it at face value and started to go. And then realized after the fact that you [Plaintiff] were the male that ran past me." Trial Tr. 78:20-79:1.

Apparently Officer Schlosser belatedly realized that Mr. Franks
was one of the two men whom he had encountered at Madison and
Chatham a few minutes earlier and who had directed them as to
the whereabouts of the speeding vehicle.

Officer Schlosser stated that he continued to look for
the individual he had observed in the park (and apparently at
Madison and Chatham). He testified that he found Plaintiff
approximately two and a half blocks away. Id. at 75:9-11. He
also testified that at some point, "a few minutes from the
initial time [he] observed the vehicle and the males flee from
the vehicle," he learned over police radio that the black Impala
was wanted in relation to a bank robbery in Harrison Township,
New Jersey. Id. at 76:23-77:3. Upon finding Plaintiff, Officer
Schlosser testified, "I secured him right there near the
intersection of Ann and Cedar and I went over the air, and a
marked police vehicle . . . came to my location . . . I secured
Mr. Franks in the back of that car." Id. at 77:5-9. Officer
Schlosser stated that he stopped and detained Plaintiff because
he had earlier seen Plaintiff leaving a vehicle at the park that
was the subject of a bank robbery investigation. Id. at 83:17-

---

At the state court trial, Officer Schlosser also
explained that he initially did not realize that Plaintiff was
one of the men he was looking for because "he had ditched his
outer jacket." Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 5,
Commonwealth v. Franks, CP-51-CR-0000876-2011, (Ct. Com. Pl.
Phila. Cnty. July 26, 2011), Trial Tr. 34:21-24.

20.

Meanwhile, Officer Shaw arrested the individual with the backpack that he had chased northbound. Id. at 40:1-22. He recovered a loaded DC TEC-9 from inside the school bag and prepared a property receipt. Id. at 40:22-24, 41:20-21; Defs.' Ex. 7.

Plaintiff testified to a different version of events. He explained that he was walking down Cedar Avenue when he was first approached by Officer Shaw.[5] Id. at 7:4-18. Plaintiff testified that Officer [Schlosser] asked for permission to search him, which he granted, and then after searching him, told him to continue on. Id. at 7:19-21. Plaintiff stated that he then walked another four or five blocks before Officer [Schlosser] returned, placed him in handcuffs, and called for a law enforcement patrol car. Id. at 7:23-25. Plaintiff testified that he was then driven approximately nine blocks to a location where a DC TEC-9 assault weapon was found. Id. at 8:1-2. According to Plaintiff, an officer approached him in the car and accused him of owning the gun. Id. at 8:13-15.

---

[5]     It appears that Plaintiff may have misidentified which Officer he had been dealing with. When later asked to identify the arresting officer in the courtroom, Plaintiff identified Officer Schlosser. Id. at 9:1-19. Defendants do not contest that it was Officer Schlosser who arrested Plaintiff. The Court, therefore, finds that it was Officer Schlosser, and not Officer Shaw, who arrested Plaintiff.

Plaintiff was taken to the 24th District police station where Detective Komorowski conducted an investigation of the arrest. Id. at 8:16-19. Detective Komorowski testified that he received information from the police regarding a bank robbery in Harrison Township, which led to a police pursuit in the Philadelphia area. Id. at 85:9-13. Detective Komorowski executed a search warrant of the black Impala and took photos of the items recovered from the vehicle along with the TEC-9 handgun. Id. at 86:9-87:20. He then created preliminary arrest and investigation reports associating Plaintiff with the bank robbery based on Officer Schlosser's identification and the information provided to the detective by Officer Ciaccia, the patrolman who had pursued the black Impala across the Benjamin Franklin Bridge. Id. at 90:10-91:9, 33:21-34:25; Defs.' Ex. 5; Defs.' Ex. 1.

Based on this information, Assistant District Attorney Jacqueline Kaplan filed a criminal complaint against Plaintiff in Philadelphia County on December 4, 2010, charging eight counts: possession of a prohibited firearm, conspiracy, possession of a firearm with an altered manufacture number, carrying a firearm without a license, eluding an officer, carrying a firearm in public, possession of an instrument of crime with intent, and recklessly endangering another person. Defs.' Ex. 1. A preliminary hearing in the Court of Common Pleas

of Philadelphia County was held on January 20, 2011 and an Information was filed on January 31, 2011. Criminal Docket, CP-51-CR-0000876-2011, Court of Common Pleas of Phila. Cnty.[6] On February 10, 2011, Plaintiff was formally arraigned. Id. A bench trial was held on July 26, 2011 before Judge Paula A. Patrick. Id. Judge Patrick found Plaintiff not guilty on all charges. Id.

At trial, Plaintiff testified that after he was acquitted of all charges in Philadelphia, he was transferred to New Jersey by authorities to await trial on a five count indictment in Gloucester County, where he remained in jail for four months. Trial Tr. 15:6-12; Pl.'s Resp. to Mot. Summ. J. 4. Plaintiff testified that Detective Komorowski submitted "false and slanderous information" to the State of New Jersey. Trial Tr. 15:6, 17:7-15. He pointed to a Police Department Investigation Report dated December 3, 2010, and prepared by Officer Sundberg. Pl.'s Ex. 1. The report reads: "Sgt. Komonowski [sic] provided this department with available reports and arrest information obtained." Id. Plaintiff testified that several months after his transfer to New Jersey, all charges

---

[6]      The Court takes judicial notice of the state court docket. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

against him were dismissed due to insufficient evidence. Trial
Tr. 15:11-15, 24:18-25.


**V.   CONCLUSIONS OF LAW**

The Court proceeds as follows: it first determines
whether Officer Schlosser falsely arrested Plaintiff. It then
determines whether Detective Komorowski defamed Plaintiff in
submitting his police report to the authorities in Gloucester
County, New Jersey. If Plaintiff proves one or both of his
claims, the Court determines the amount of damages, if any, he
is to be awarded.


A.   <u>False Arrest</u>

To state a viable claim for relief under 42 U.S.C.
§ 1983, a plaintiff must prove: (1) "that the defendant has
deprived him of a right secured by the 'Constitution and laws'
of the United States"; and (2) "that the defendant deprived him
of this constitutional right 'under color of any statute,
ordinance, regulation, custom, or usage, of any State or
Territory.'" <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150
(1970). The plaintiff bears the burden of proof on the elements
of a Section 1983 claim by a preponderance of the evidence. <u>See,
e.g.,</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir.
1995). Plaintiff must prove that in light of all of the

evidence, his claims are more likely so than not.

To state a claim for false arrest under the Fourth Amendment, Plaintiff must establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). "Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). A determination of probable cause requires consideration of the totality of circumstances, including "the 'knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest.'" United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002) (quoting United States v. Harris, 482 F.2d 1115, 1117 (3d Cir. 1973)). While probable cause requires more than "mere suspicion," that a person has committed a crime, it does not require that the officer have sufficient evidence to prove guilt beyond a reasonable doubt. Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Officer Schlosser arrested him without probable cause, in

violation of his Fourth Amendment rights. Plaintiff argues that he was arrested simply because he is African American, and the police had been chasing three African American men. Trial Tr. 98:23-99:1. Plaintiff emphasizes that Officer Schlosser never drew a service weapon on him even though the officer allegedly believed that Plaintiff had been involved in an armed robbery. Id. at 104:2-15. He states that if Officer Schlosser genuinely believed that he was the wanted suspect, Officer Schlosser would have felt threatened and drawn a weapon before approaching him. Id. Furthermore, Plaintiff argues that it is implausible that the officer, in their first encounter, failed to identify Plaintiff as the suspect but then later realized his mistake. Pl.'s Proposed Findings of Fact and Conclusions of Law 1, ECF No. 52.

Defendants respond by attacking Plaintiff's credibility and reiterating that Officer Schlosser arrested Plaintiff based on his personal observation of the men fleeing the black Impala. Defs.' Proposed Findings of Fact and Conclusions of Law 4-5, 7, ECF No. 51. Defendants point to various discrepancies in Plaintiff's testimony and urge the Court to discredit it.[7] Id. at 4-5.

---

[7]        For example, at Plaintiff's deposition, he testified that he was only in Philadelphia for one day and did not stay overnight. Trial Tr. 29:2-10. At trial, Plaintiff testified that he was in Philadelphia the night before he was arrested as well.

To determine whether or not Officer Schlosser had probable cause to arrest Plaintiff, however, it is not necessary to reach a conclusion as to Plaintiff's credibility. The alleged contradictions in Plaintiff's testimony as to what he was doing in Philadelphia at the time of the arrest are not relevant, in that they were not known to Officer Schlosser at the time of the arrest and, consequently, did not impact Officer Schlosser's calculus in determining that there was probable cause to arrest Plaintiff. In any event, even discounting Plaintiff's testimony, the Court finds that there was no probable cause to arrest Plaintiff.

Officer Schlosser testified that at closest, he viewed the suspects fleeing the black Impala from twenty feet away. He testified that he believed that when the suspects were in the park, they were initially behind the officers and that when they saw the jackets with the word "Police" on the back, they began to run. It is not clear from what angle Officer Schlosser viewed the suspects, especially Plaintiff, at the park, or that he ever actually saw any of the suspects' faces. Officer Schlosser did not testify that he recognized Plaintiff because of any clothing or other physical feature. Officer Shaw testified that when the

_____

Id. at 27:5-19. He explained that he gave the wrong timeline of events at his deposition because his memory of his time in Philadelphia was hazy since he was under the influence of drugs and alcohol. Id. at 29:17-25.

15

suspects turned in the direction of the officers, they immediately began to run. Officer McNicholas stated that by the time he looked towards the commotion he had been hearing, the suspects were beginning to run. Based on this testimony, it seems that at best, Officer Schlosser had only a fleeting glance at the suspects as a group from twenty feet away.

Concerning Officer Schlosser's failure to identify Plaintiff at the initial encounter at Madison and Chatham, Officer Schlosser testified that he did not identify Plaintiff as one of the fleeing individuals because he was "caught up in the moment" and because Plaintiff was not wearing an article of outerwear that the suspect had been wearing. Though the other officers, presumably, would have had a similar initial view of the suspects as Officer Schlosser, none of them ever identified Plaintiff as one of them.

The Court finds that Officer Schlosser's testimony is not credible.[8] First, based on Officer Schlosser's testimony and that of the two other officers on the scene, the Court finds

---

[8]     The Court recognizes that an officer on patrol is required to make split second decisions based on existing circumstances, and does not have the luxury of deliberating from the serenity of a judge's chambers. See Paff, 204 F.3d at 436 ("[T]he law recognizes that probable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.'") (citation omitted). It is under these conditions that the Court evaluates the officer's actions.

16

that Officer Schlosser had minimal, if any, opportunity to observe the three males who ran through the park, and it was based upon this observation that he later identified Plaintiff. [9] Second, it is implausible that if Plaintiff knew he was being pursued by the police, he would have stopped to talk to the officers at Madison and Chatham and point them in the direction of the vehicle which the officers were pursuing. Third, it is not reasonable that if Officer Schlosser could recognize Plaintiff as one of the three individuals he had seen running in the park, and knew that the suspect was wanted for committing a violent bank robbery, he would have apprehended Plaintiff without taking any safety precautions, including drawing a weapon or calling for back up.

Considering all attendant circumstances, Plaintiff has established by a preponderance of evidence both that he was arrested and that based on the information and knowledge available to Officer Schlosser at the time of arrest, there was no probable cause for Plaintiff's arrest. For this reason, the Court finds in favor of Plaintiff on his claim of false arrest and against Officer Schlosser. The Court will now address

---

[9]     If Officer Schlosser's arrest was merely based on race, as Plaintiff alleges, the Third Circuit has clearly held that race alone does not constitute probable cause. United States ex rel. Wright v. Cuyler, 563 F.2d 627, 630 (3d Cir. 1977).

Plaintiff's pendent state law claim.

     B.   <u>Defamation</u>

       Under Pennsylvania law, to establish a prima facie case of defamation, a plaintiff must prove that: (1) the communication was defamatory in nature; (2) the communication was published by the defendant; (3) the communication applied to the plaintiff; (4) the recipient of the communication understood its defamatory meaning and its application to the plaintiff; and (5) the plaintiff suffered special harm as a result of the communication's publication. 42 Pa. Con. Stat. Ann. § 8343(a) (West 2013). A communication is considered defamatory if it tends to harm the reputation of a person. 12th <u>Street Gym, Inc. v. Gen. Star Indem. Co.</u>, 93 F.3d 1158, 1163 (3d Cir. 1996) (quoting <u>Kryeski v. Schott Glass Technologies</u>, 626 A.2d 595, 600 (Pa. Super. Ct. 1993)). Truth is an absolute defense to a claim of defamation. <u>Pelagatti v. Cohen</u>, 535 A.2d 1337, 1345-46 (Pa. Super. Ct. 1987).

       Here, the Court need not address the merits of Plaintiff's claim of defamation because Detective Komorowski is immune from the claim. Under the Pennsylvania Political Subdivision Tort Claims Act, "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the

scope of his office or duties only to the same extent as his employing local agency." 42 Pa. Cons. Stat. Ann. § 8545 (West 2013). As such, a police officer is generally immune from state law tort claims. Id. § 8541. There is an exception, however, for intentional torts, or those acts causing injury performed with "actual malice or willful misconduct." Id. § 8550.

Plaintiff alleges that Detective Komorowski defamed him by submitting his police investigation report to the authorities in Gloucester County. This act was clearly within the scope of Detective Komorowski's official duties. Moreover, Plaintiff failed to tender any evidence of malice. To show malice in the context of his defamation claim, Plaintiff would have needed to provide evidence that Detective Komorowski published statements knowing that they were false or recklessly disregarding their falsity. See Tucker v. Phila. Daily News, 484 A.2d 113, 128 (Pa. 2004). Because there is no evidence that Detective Komorowski acted maliciously, he is immune from Plaintiff's claim of defamation. The Court therefore finds in favor of Detective Komorowski on this claim and against Plaintiff.

C.    Damages

A successful claim of false arrest under Section 1983 entitles Plaintiff to damages for the time of detention until

the issuance of process or arraignment.[10] See Wallace v. Kato,
549 U.S. 384 (2007). Compensatory damages under § 1983 are
ordinarily governed by state tort-law compensation theory.
Fontroy v. Owens, 150 F.3d 239, 242 (3d Cir. 1998). They may
include, "not only out-of-pocket loss and other monetary harms,
but also such injuries as 'impairment of reputation . . .,
personal humiliation, and mental anguish and suffering.'"
Memphis Cmty. Sch. Dist. V. Stachura, 477 U.S. 299, 307 (1986)
(quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)).
Plaintiff has the burden of proving compensatory damages by a
preponderance of the evidence. Third Circuit Model Jury
Instructions (Civil) § 4.8.1 (2013). Where a plaintiff has not
shown proof of actual injury, nominal damages will be awarded.
Carey v. Piphus, 435 U.S. 247, 266 (1978); Third Circuit Model
Jury Instructions (Civil) § 4.8.2. However, where actual injury
is shown, compensatory damages may be awarded even if the
monetary value of the injury is difficult to ascertain. Brooks
v. Andolina, 826 F.2d 1266, 1269 (3d Cir. 1987) (holding that
damages could be inferred from prisoner's placement in punitive
segregation for thirty days in violation of constitutional
rights).

Here, Plaintiff did not offer any evidence of monetary

---

[10]     Here, Plaintiff was arrested on December 3, 2010, and
a preliminary hearing was only held on January 20, 2011.

damages such as lost wages or medical expenses incurred due to physical injury. Plaintiff seeks damages for emotional distress,[11] personal humiliation, and mental anguish, all experienced as a result of his loss of freedom. Compl. 5. This loss of freedom and the attendant circumstances rise to the level of actual injury. Here, Plaintiff was detained for 48 days before he was brought before a judicial officer who determined probable cause.[12] The Court acknowledges the difficulty in placing a dollar value on intangible injuries, including the loss of freedom, and also notes that awards to plaintiffs suffering such injuries span a broad range. See Ruscavage v. Zuratt, 831 F. Supp. 417, 419 (E.D. Pa. 1993) (collecting cases awarding wide range of damages for humiliation, embarrassment, mental strain and anguish). Taking into account the nature of the constitutional violation and harm, including the length of Plaintiff's detention and the resulting humiliation and anguish suffered, the Court will award Plaintiff $7,500 in compensatory damages.

---

[11]    The Third Circuit has held that expert medical evidence is not required to prove emotional distress in Section 1983 cases. Bolden v. Southeastern Pennsylvania Transp. Auth., 21 F.3d 29, 36 (3d Cir. 1994).

[12]    Once a judicial officer determines probable cause based on evidence presented at a hearing, damages flowing from the arresting officer's initial incorrect determination of the existence of probable cause are superseded in cause by the judicial officer's determination.

Punitive damages are not warranted in this case. Such damages are available in Section 1983 actions not only if the defendants acted with malicious intent or evil motive but also if they acted with "reckless or callous disregard of, or indifference to, the rights and safety of others." Smith v. Wade, 461 U.S. 30, 33, 56 (1983). Plaintiff has not shown evidence that the Officer Schlosser's conduct rose to this level. Therefore punitive damages will not be awarded.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has met his burden in establishing a claim of false arrest against Officer Schlosser but not in establishing a claim of defamation against Detective Komorowski. The Court will enter judgment in favor of Plaintiff in the amount of $7,500 on the claim of false arrest and in favor of Detective Komorowski on the claim of defamation. An appropriate order will follow.

## Court Exhibit No. 1

